# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Renee Vandergrift,**

    **Plaintiff,**

**v.**                                                                                      **Case No. 12-1444-JWL**

**Carolyn W. Colvin,**[1]
**Acting Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Renee Vandergrift brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the decision of defendant, the Commissioner of Social Security, to deny her application for social security disability insurance benefits under Title II of the Social Security Act. According to plaintiff, defendant erred by characterizing plaintiff's migraine headaches as "non-severe," improperly applying the "grid rules" and failing to make a finding as to the actual erosion of the light vocational base, and failing to properly assess plaintiff's residual functional capacity. As explained in more detail below, the court rejects plaintiff's argument and affirms defendant's decision.

## I.    Procedural Background

---

[1] On February 14, 2013, Ms. Colvin became Acting Commissioner of Social Security and the court thus substitutes Ms. Colvin for Commissioner Michael J. Astrue as the defendant. *See* Fed. R. Civ. P. 25(d)(1).

On June 18, 2009, plaintiff protectively filed an application for disability insurance benefits, alleging disability beginning March 1, 2007. The application was denied both initially and upon reconsideration. At plaintiff's request, an administrative law judge ("ALJ") held a hearing on September 15, 2010, at which both plaintiff and her non-attorney representative were present. A vocational expert was not present at the hearing, but submitted written responses to interrogatories after the hearing, which were then shared with plaintiff's representative. Plaintiff's representative then requested a supplemental hearing which was held on July 6, 2011. The vocational expert and plaintiff's representative appeared at the supplemental hearing. Plaintiff did not appear due to illness and, through her representative, she waived her right to appear at the supplemental hearing.

On September 21, 2011, the ALJ rendered a decision in which he determined that plaintiff was not under a "disability" as defined by the Social Security Act from March 1, 2007 through the date of the decision.[2] Consequently, the ALJ denied all benefits to plaintiff. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council. The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final decision of defendant.

## II.　Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the

---

[2] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.

correct legal standards. *See Wells v. Colvin*, 727 F.3d 1061, 1067 (10th Cir. 2013) (citing *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)). The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Wilson*, 602 F.3d at 1140). In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant. *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008).

**III.  Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings**

A "disability" for purposes of the Social Security Act requires both the "inability to engage in any substantial gainful activity" and "a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Bussell v. Astrue*, 463 Fed. Appx. 779, 781 (10th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)). The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Wilson*, 602 F.3d at 1140 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B))).

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled, *see id*. at 1139, and the ALJ in this case followed the five-step process. If a determination can be made at any of the steps that a

3

claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Id.* Step one requires the claimant to show that he or she is not presently engaged in substantial gainful activity. *Id.* Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step. The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments" that significantly limits his or her ability to perform basic work activities. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). While the ALJ concluded that some of plaintiff's asserted impairments were non-severe, including plaintiff's alleged limitations from migraine headaches, the ALJ nonetheless concluded that plaintiff had several severe impairments for purposes of the regulations, including obesity; arthritis; degenerative disc disease of the lumbar spine; bilateral shoulder impingement syndrome; fibromyalgia; and major depressive disorder. Thus, the ALJ proceeded to step three.

In step three, the ALJ determines whether the impairment "is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." *Best-Willie v. Colvin*, 514 Fed. Appx. 728, 733 (10th Cir. 2013). "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Id.* If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment or combination of impairments prevents him from performing his [or her] past work." *Wilson*, 602 F.3d at 1139 (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). With respect to the third step of the process in this case, the ALJ determined

that plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations.

At the fourth step, the ALJ determined that plaintiff retained the residual functional capacity (RFC) for light work as defined in 20 C.F.R. §§ 404.1567(b) to include lifting or carrying up to twenty pounds occasionally or ten pounds frequently; standing or walking about six hours out of an eight hour workday; and sitting six hours out of an eight hour workday; except that plaintiff must be afforded the option to sit for thirty minutes then stand for thirty minutes as needed. The ALJ further concluded that plaintiff was limited to occasional postural maneuvers such as stooping, kneeling, crouching, crawling and climbing ramps or stairs; must avoid climbing ladders, ropes or scaffolds; limited to occasional overheard reaching with the right, dominant upper extremity; and should avoid concentrated exposure to cold temperature extremes and vibration. Finally, the ALJ concluded that plaintiff was able to perform occupations that do not require exposure to dangerous machinery or unprotected heights and that she was able to perform simple, routine, repetitive tasks. Based on evidence adduced from the vocational expert, the ALJ concluded that plaintiff, with those limitations, could not perform her past relevant work as a telephone order clerk, sales clerk or cashier-checker.

Thus, the ALJ proceeded to the fifth and final step of the sequential evaluation process– determining whether the claimant has the residual functional capacity "to perform work in the national economy, given her age, education, and work experience." *See id*. (quoting *Lax*, 489 F.3d at 1084). At that point, the ALJ properly shifted the burden of proof to defendant to establish that plaintiff retains a sufficient capacity to perform an alternative work activity and that there are sufficient jobs in the national economy for a hypothetical person with the

claimant's impairments. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). At this step, the ALJ concluded that plaintiff was not disabled, a conclusion that rested on a finding that plaintiff, despite her limitations, nonetheless could perform jobs that exist in significant numbers in the national economy, such as an Office Helper, Recreation Aide and Cashier II position.

## IV. Analysis of Plaintiff's Specific Arguments

In her motion, plaintiff contends that defendant made three errors in this case: defendant erred by characterizing plaintiff's migraine headaches as "non-severe," improperly applying the "grid rules" and failing to make a finding as to the actual erosion of the light vocational base, and failing to properly assess plaintiff's residual functional capacity. The court addresses each of these alleged errors in turn.

*A. Migraines*

As noted earlier, the ALJ, at step two of the sequential analysis, characterized plaintiff's migraine headaches as non-severe because the medical evidence established "no more than a minimal effect" on plaintiff's ability to "perform basic work activities." According to plaintiff, this conclusion was in error because the record evidence satisfies the required "de minimus" showing that plaintiff's migraine headaches significantly limited plaintiff's ability to do basic work activities. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005). The court disagrees and concludes that substantial evidence supports the ALJ's conclusion that plaintiff's migraine headaches were not severe impairments.

6

Plaintiff testified that she had migraine headaches from one to two times per month and that, on those occasions, she stays in her room in the dark "away from noise and everything." Nonetheless, as indicated by the ALJ, the record reflects that plaintiff had been able to work in the past despite her migraines and did not present evidence showing that her migraines had become more frequent or more severe. Plaintiff criticizes the ALJ's reliance on the fact that plaintiff treated her migraines with over-the-counter medication as opposed to prescription medication in light of her testimony that she had taken prescription migraine medication in the past but ceased doing so because she could not afford it. But plaintiff testified at the hearing that she maintained health insurance through her spouse's employment and had a prescription medication card. In light of the ALJ's findings that plaintiff was able to maintain past employment despite her migraine headaches, had not shown an increase in the severity or frequency of those headaches since that time, and had treated those headaches successfully with only over-the-counter medication, substantial evidence supports the ALJ's conclusion that plaintiff's migraines had no more than a minimal effect on her ability to work. Plaintiff has shown no error in the step two finding that her migraine headaches were not a severe impairment.[3]

B. *Grid Rules and Erosion of the Vocational Base*

---

[3] In any event, any error at step two is rendered harmless because the ALJ proceeded to the next step of the sequential process after concluding that plaintiff had several other impairments that were severe. *Burk v. Astrue*, 493 Fed. Appx. 913, 915-16 (10th Cir. Aug. 6, 2012) (failure to find that migraine headaches were severe at step two is not reversible error when ALJ proceeded to step three after concluding that claimant could not be denied benefits at step two because she had at least one severe impairment).

For her second argument, plaintiff contends that the ALJ improperly applied the "grids" and failed to make a proper finding concerning the erosion of the vocational base.[4] The ALJ, however, did not use the grids in determining that plaintiff was not disabled. Rather, the ALJ expressly noted that the case was not a grids-based case because plaintiff could not perform the full range of light work. Thus, the ALJ appropriately relied not on the grids but on the testimony of the vocational expert to determine the effect of plaintiff's limitations on the occupational base of light work.

To the extent that plaintiff suggests that the ALJ erred by failing to provide a "percentage" rate of erosion of the vocational base, she has failed to provide any authority suggesting that the ALJ is required to find a percentage of reduction of the vocational base and the court can find no authority supporting this argument. Significantly, plaintiff does not contend that the number of jobs found by the VE does not constitute a significant number of jobs or that a specific percentage of erosion is required to enable a determination of whether the number of jobs cited by the VE is a significant number of jobs. Here, the ALJ propounded a hypothetical question to the VE that included the limitations in the ALJ's residual functional capacity assessment and the VE responded to that question by citing representative occupations which the individual would be able to perform. The VE further indicated that those occupations exist in significant numbers in the national economy. Thus, although the VE did not provide an

---

[4] The "grids" comprise tables of rules that determine whether a claimant is disabled based on his RFC category, age, education and work experience. *Spaulding v. Astrue*, 379 Fed. Appx. 776, 778 (10th Cir. May 25, 2010) (citing 20 C.F.R. pt. 404, subpt. P, app. 2). The grids may not be used conclusively if the claimant has nonexertional limitations that prevent him from performing the full range of work within an RFC category. *Id*.

8

erosion percentage, the VE's response to the ALJ's hypothetical question provides a proper basis for the ALJ's disability decision. *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

*C. RFC Assessment*

Lastly, plaintiff contends that the ALJ's residual functional capacity assessment was erroneous because it failed to account for plaintiff's migraines and failed to consider the opinion of plaintiff's treating physician. The court finds no error. With respect to plaintiff's migraines, the court has already determined that substantial evidence supports the ALJ's conclusion that plaintiff's migraines had no more than a minimal effect on plaintiff's ability to work. In such circumstances, while the ALJ must consider all non-severe impairments in assessing plaintiff's RFC,[5] he is not required to specifically include the effects of plaintiff's migraines in the RFC assessment in light of his conclusion that plaintiff's migraines did not produce work limitations. *See Moua v. Colvin*, ___ Fed. Appx. ___, 2013 WL 3951709, at *3 (10th Cir. July 30, 2013) (ALJ did not err in failing to include headaches in hypothetical question to VE where plaintiff identified no work limitations caused by headaches); *Holley v. Colvin*, 2014 WL 172183, at *15 (D. Kan. Jan. 15, 2014) (no error in failing to include frequent restroom breaks in RFC assessment where no basis existed to find that urinary incontinence had more than a minimal effect on ability to perform work); *Walden v. Astrue*, 2012 WL 3733305, at *8 (D. Kan. Aug. 28, 2012) (no error when ALJ failed to include migraine headaches in RFC findings where ALJ

---

[5] In his opinion, the ALJ expressly acknowledged that, in assessing the RFC, he was required to "consider all of the claimant's impairments, including impairments that are not severe," and he expressly stated that he "considered all symptoms" in assessing plaintiff's RFC. The court, then, is satisfied that the ALJ, in making his RFC findings, considered plaintiff's migraine headaches.

9

considered all symptoms in making the RFC findings and plaintiff failed to establish that he had limitations from migraine headaches).

With respect to plaintiff's argument that the ALJ erred in failing to rely on the opinion of plaintiff's treating physician, the court concludes that substantial evidence supports the ALJ's conclusion that the opinion of plaintiff's treating physician was entitled to "little weight" as the opinion was inconsistent with the physician's own treatment notes and was not supported by any other medical evidence in the record. This statement, along with the ALJ's citation to contrary, well-supported medical evidence, persuades the court that the ALJ provided good reasons in his decision for the weight he assigned to the treating physician's opinion. This argument, then, is rejected. *Pisciotta v. Astrue*, 500 F.3d 1074, 1078-79 (10th Cir. 2007) (ALJ permissibly assigned "little weight" to treating physician opinion where opinion was inconsistent with claimant's questionnaire and other opinions were more detailed, thorough and internally consistent).

In sum, having carefully reviewed the record in this case and having considered plaintiff's arguments in light of the record, the court concludes that substantial evidence supports defendant's decision to deny Ms. Vandergrift's application for disability benefits and that no deviation from established legal standards occurred.

**IT IS THEREFORE ORDERED BY THE COURT THAT** judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

**IT IS SO ORDERED.**

Dated this 6th day of February, 2014, at Kansas City, Kansas.

                                                              s/ John W. Lungstrum
                                                              John W. Lungstrum
                                                              United States District Judge